United States District Court for the Western District of Texas
Austin Division

| | | |
|---|---|---|
| Tyree Talley, | § | |
| Plaintiff, | § | |
| | § | Case no. 1:21-cv-00249 |
| v. | § | |
| | § | |
| City of Austin and | § | |
| John Does, | § | |
| Defendants. | § | |

**Plaintiff's Complaint and Request for Jury Trial**

To the Honorable Court:

## I. Introduction

This is a lawsuit about an as-yet unidentified Austin police officer or officers who shot Plaintiff Tyree Talley twelve times in the ear, arm, groin, and legs. Officer Doe(s) shot Tyree without any warning. Tyree is deaf. The officer(s) continued to shoot Tyree even after he was on the ground in the fetal position. Tyree was shot twelve times to punish him for participating in a peaceful protest against police brutality. Most of the bullets were fired *after* Tyree was on the ground.

This lawsuit is also about the City of Austin's appalling response to protests—especially its pattern of violently violating demonstrators' civil rights—during the weekend of May 30–31, 2020. The City compounded its mishandling of the situation by failing to investigate or attempt to deter further misconduct by Officer Does and other police.

Officers also failed to follow protocol required and failed to utilize services available to the APD when interacting with a deaf civilian. The Americans with Disabilities Act (ADA) and Section 504 prohibit discrimination and police misconduct against individuals based on disability.

(42 USC. § 12131, et seq. and 29 USC. § 794). No attempt was made by police to communicate to Tyree that he was required to clear the area. No extra steps or precautions were taken by APD before they started shooting into the crowd.

Finally, based on multiple credible sources, the City caused severe injuries by allowing its stockpile of "less-lethal" munitions to expire, and thus harden, and then arming its police with these expired munitions for crowd control during peaceful demonstrations.

**Table of Contents**

I. Introduction ..... 1
II. Parties ..... 3
III. Jurisdiction ..... 3
IV. Venue ..... 3
V. Facts ..... 3
A. Officers shot Tyree Talley without warning and even though he was doing nothing wrong. ..... 3
B. Other protesters were also severely injured. ..... 11
VI. Claims ..... 12
A. Officer Doe violated Tyree Talley's First Amendment rights when he or she shot Tyree in retaliation for protesting police misconduct. ..... 12
B. Officer Doe violated Tyree Talley's Fourth and Fourteenth Amendment rights when he or she shot Tyree without justification. ..... 12
C. Officer Doe acted with such impunity and reckless disregard for civil rights, this case warrants damages that will deter this type of misconduct in the future. ..... 13
D. The City of Austin's policy of using excessive violence to control demonstration crowds violated protesters' First, Fourth, and Fourteenth Amendment rights. ..... 14
E. The City was negligent when it used expired munitions against protesters. ..... 15
F. Austin Police violated the Americans with Disabilities Act when they failed to provide communications aids and services or use the notes app on their APD-issued cell phone to communicate. ..... 15
VII. Damages ..... 16
VIII. Request for jury trial ..... 16
IX. Prayer ..... 17

## II. Parties

1. Tyree Talley is a resident of Austin, Texas.

2. The City of Austin is a Texas municipal corporation in the Western District of Texas. Brian Manley is Austin's policymaker when it comes to policing.

3. Defendant John Doe(s) are one or more as-yet unidentified (to Tyree or the Austin community, anyway) Austin police officer(s).

## III. Jurisdiction

4. This Court has federal question subject matter jurisdiction over this 42 U.S.C. § 1983 lawsuit under 28 U.S.C. § 1331.

5. This Court has general personal jurisdiction over the Officer Defendants because they works and lives in Texas. The City of Austin is subject to general personal jurisdiction because it is a Texas municipality.

6. This Court has specific personal jurisdiction over the Officer Defendants and the City because this case is about their conduct that occurred here in Austin, Texas.

## IV. Venue

7. Under 28 U.S.C. § 1391(b), the Western District of Texas is the correct venue for this lawsuit because the events described above and below occurred in Austin.

## V. Facts

### A. Officers shot Tyree Talley without warning and even though he was doing nothing wrong.

8. On the evening of May 31, 2020, Tyree Talley was peacefully exercising his constitutional right to assemble and protest the government. Tyree and his friends were gathered with a group of protestors near the southeast corner of 8th Street and the I-35 frontage road. In other words,

Tyree was across the street from the Austin Police Department headquarters. Austin police officers were standing on the I35 bridge that carries interstate traffic above 8th Street and another line of officers was standing at the east end of the plaza in front of APD headquarters:




9. This picture taken by a bystander at approximately the same time that Tyree was shot shows the two police lines, one above the crowd on the bridge and the other on the elevated plaza in front of APD headquarters:

10. Tyree, who is deaf, did not hear or see any indication that law enforcement was commanding him to clear the area.

11. At approx. 9:15pm, Tyree felt something whiz by his ear. He felt his ear to see what happened and began to realize that he had been shot.

12. Less than a second later, and before he could react, Tyree was struck in the groin with an APD projectile and collapsed in the crosswalk in pain. This screenshot from bystander video shows Tyree collapsed in the street:



13. Tyree was then shot ten more times by Austin police *while he was on the ground in the fetal position*.

14. The bystander video shows a Good Samaritan run to help Tyree even as the audio shows that the police were still shooting:





15. This photo taken by a member of the media at the same time as the second screenshot above at paragraph 14 shows the Good Samaritan tending to Tyree:



16. After the shooting stopped, five more people ran to help as seen in this screenshot from the bystander video:



17. The group was able to help Tyree get to his feet and helped him to limp away from the scene:



18. Tyree's wounds were treated at the emergency room at St. David's on Ben White.

19. He was unable to take care of himself or perform daily tasks, much less work, for weeks due to the pain. These pictures were taken at various stages of the healing process:

Right shoulder:



Right elbow:



Back of left and right thighs:



Right ankle:



20. Tyree also had lacerations on his genitals and back side from the police projectiles.

21. Some of the wounds became infected and Tyree was treated later at the Seton ER on 38th Street.

22. On May 31, *Texas Tribune* journalists collected spent munitions fired by Austin police at demonstrators, including Tyree, on May 30 and 31:

https://www.texastribune.org/2020/06/03/texas-police-force-protests-george-floyd/.

23. Austin police Chief Brian Manley later identified the types of munitions that he ordered his officers to carry and use on May 30 and 31. Under questioning from the Austin City Council—and referring to the picture of expended projectiles collected by *Texas Tribune* journalists (above)—he stated:

> And then since you've got these pictures up here, what I see is the 12-gauge munition is the one on the direct left. That is a foam baton round, and so that -- rubber bullets are -- and I guess maybe it's a misnomer -- rubber bullets are also from a 12-gauge shotgun something you do as a skip round into the answering or something. That is a foam baton round that we also have access and use of. That's what that larger one is that's being held there. And then of course the one in the middle is a gas can, and I don't know whether that is smoke or whether that was the cs can.

https://www.austintexas.gov/edims/document.cfm?id=341786 (Transcript Austin City Council, June 4, 2020).

24. Upon information and belief, the City armed its police on May 30 with expired munitions which had hardened over time and thus caused more severe injuries than munitions used within the manufacturers' recommended time frames.

**B. Other protesters were also severely injured.**

25. A group of emergency room doctors who had treated Austinites injured by police on May 30 and May 31 at Dell Seton Medical Center, published an op-ed in *The New England Journal of Medicine* about their observations. The doctors unequivocally concluded that these munitions should not be used for crowd control, stating:

> In Austin, Texas, tensions culminated in 2 days of vigorous protest, during which police used beanbag munitions for crowd control, resulting in numerous clinically significant injuries.
>
> . . .
>
> At the closest level 1 trauma center, located blocks from the protests in Austin, we treated 19 patients who sustained beanbag injuries over these 2 days.
>
> . . .
>
> Four patients had intracranial hemorrhages. One patient presented with a depressed parietal skull fracture with associated subdural and subarachnoid hemorrhages, leading to emergency intubation, decompressive craniectomy, and a prolonged stay in the intensive care unit. Another patient presented with a depressed frontal bone fracture with retained beanbag, which was treated with an emergency craniotomy and cranioplasty.
>
> . . .
>
> Although our report reflects the experience at only one center during a short period and we cannot determine the frequency of injuries when these munitions are used, these findings highlight the fact that beanbag munitions can cause serious harm and are not appropriate for use in crowd control. Beanbag rounds have since been abandoned by our local law enforcement in this context.

https://www.nejm.org/doi/full/10.1056/NEJMc2025923.

## VI. Claims

### A. Officer Doe violated Tyree Talley's First Amendment rights when he or she shot Tyree in retaliation for protesting police misconduct.

26. Tyree Talley incorporates sections I through V above into his First Amendment claim.

27. Tyree brings this claim under 42 U.S.C. § 1983.

28. Tyree exercised his right to free speech and his right to assemble with other demonstrators to protest police brutality on May 30, 2020.

29. Officer Doe shot Tyree because Tyree was protesting Austin police and other police departments around the country for their habitual use of excessive force. The Officer Defendant's decision to shoot Tyree with "less than lethal" rounds, and the decision to keep firing after he was incapacitated, was substantially motivated by Tyree's exercise of his First Amendment rights.

30. The Officer Defendant was acting under color of law when he or she shot Tyree as retribution for Tyree exercising his First Amendment rights. The Officer Defendant was acting under color of law when he or she directly and proximately caused Tyree's injuries.

### B. Officer Doe violated Tyree Talley's Fourth and Fourteenth Amendment rights when he or she shot Tyree without justification.

31. Tyree Talley incorporates sections I through VI.A above into his Fourth and Fourteenth Amendment claims.

32. Tyree brings this claim under 42 U.S.C. § 1983.

33. The Officer Defendant is liable to Plaintiff under 42 U.S.C. § 1983 for his or her use of excessive force that constituted a deprivation of Tyree's Fourth and Fourteenth Constitutional right to due process.

34. The Officer Defendant's unlawful and unjustified use of force against Tyree was excessive and was objectively unreasonable in light of established law. The Officer Defendant shot Tyree even though Tyree did not pose a danger to anyone and *after* Tyree was on the ground in the fetal position. Tyree was not armed and never presented a threat to any of the individuals around him.

35. The force used by the Officer Defendant was unnecessary, excessive, and unreasonable under the circumstances because Tyree did not pose an immediate threat to the safety of police officers or others. The use of such excessive force was objectively unnecessary. Additionally, the use of such force was substantially motivated by Tyree's presence at a protest against police brutality. Tyree posed no threat to officers to justify the use of such force.

36. The Officer Defendant was acting under color of law when they shot Tyree. Defendant engaged in a willful, malicious, and reckless course of conduct that was intended to cause and, in fact, caused Tyree to suffer extreme and severe mental and emotional distress, agony, and anxiety.

37. Defendant's unlawful and unconstitutional use of force against Tyree directly and proximately caused his damages.

**C. Officer Doe acted with such impunity and reckless disregard for civil rights, this case warrants damages that will deter this type of misconduct in the future.**

38. Tyree Talley incorporates sections I through VI.B above into his punitive damages claim.

39. The Officer Defendant's actions and conduct were egregious, reckless, and endangered numerous peaceful protesters and bystanders. Tyree seeks punitive damages to deter this type of retaliation and excessive force against protesters who demonstrate against police brutality in the future.

**D. The City of Austin's policy of using excessive violence to control demonstration crowds violated protesters' First, Fourth, and Fourteenth Amendment rights.**

40. Tyree Talley incorporates sections I through VI.C above into his *Monell* claim.

41. Tyree brings this claim under 42 U.S.C. § 1983.

42. Austin had these policies, practices, and customs on May 30-31, 2020:

a. A policy of not using dangerous kinetic projectiles that caused severe and permanent injuries to control peaceful demonstrations,

b. A policy of using excessive force against non-violent demonstrators,

c. A policy not to adequately train officers regarding civil rights protected by the United States Constitution,

d. A policy not to adequately train officers in crowd control during non-violent protests,

e. A policy not to adequately supervise officers doing crowd control during non-violent protests,

f. A policy not to intervene to stop excessive force and civil rights violations by its officers during non-violent protests,

g. A policy not to investigate excessive violence by its officers against peaceful protesters, and

h. A policy not to adequately discipline officers for—and deter officers from—using excessive force and violating protesters' civil rights during demonstrations.

43. The City and Brian Manley knew about these policies and directed Austin police to comply with them. The City and Brian Manley developed and issued these policing policies with deliberate indifference to Tyree's and other peaceful demonstrators' civil rights.

44. The City and Brian Manley were aware of the obvious consequences of these policies. Implementation of these policies made it predictable that Tyree's constitutional rights would be violated in the manner they were, and the City and Brian Manley knew that was likely to occur. It was obvious that these policies would injure people on May 30. The City and Brian Manley

condoned and ratified the civil rights violations and the conduct that caused injuries on May 30 by continuing to mandate the same policies on May 31.

45. These polices were the moving force behind the Officer Defendant's violation of Tyree's civil rights and thus, proximately caused Tyree's severe injury.

**E. The City was negligent when it used expired munitions against protesters.**

46. Tyree Talley incorporates sections I through VI.D above into his negligence claim.

47. The City had a duty to every Austinite, including Tyree, to maintain and keep its stockpiles of police equipment functional and up to date. The City had a duty to Tyree and every other protester not to arm its police with expired munitions that become more dangerous with age when its police were sent to control crowds during demonstrations. Nonetheless, upon information and belief, the City knowingly armed its police with expired munitions on May 30, 2020 and thus breached its duty to Austinites including Tyree.

48. Upon information and belief, Tyree's injuries were more serious because the projectile was expired and had hardened. Upon information and belief, the City's failure to maintain unexpired munitions stores and the deliberate decision to use expired munitions against Tyree and other protesters directly and proximately caused Tyree's injuries.

**F. Austin Police violated the Americans with Disabilities Act when they failed to provide communications aids and services or use the notes app on their APD-issued cell phone to communicate.**

49. According to APD Officer Marler, who heads the department's community and culture team, APD's training for handling civilians with disabilities consists of two parts. One section, called Services for the Deaf, is mandated by the Texas Commission on Law Enforcement (TCOLE) and officers must complete it in order to receive their basic peace officer license. The other part

of the training is supplementary instruction specific to APD due to the large deaf population in Austin.

50. The TCOLE training works in conjunction with the ADA and requires that APD must provide communication aids and services. TCOLE also outlines the best practices for officers who are in emergency situations who are unable to obtain an interpreter quickly. Officers are encouraged to use the notes app on their APD-issued cell phone to write messages back and forth.

51. On May 30, 2020, Austin Police Officers failed to follow their own policies and completely disregarded Tyree's safety. Tyree was unable to hear the verbal commands to clear the area (if any) and was shot while he exercised his right to free speech and his right to assemble with other demonstrators. Officer Defendants violated Tyree's rights by failing to provide him reasonable accommodation in their execution of police tactics, including use of force.

## VII. Damages

52. Tyree Talley incorporates sections I through VI above into this section on damages.

53. Tyree seeks recovery for all of his damages including past and future pain, past and future mental anguish, past and future disfigurement, past and future physical impairment, past and future loss of enjoyment of life, past and future medical expenses, past and future lost income, past and future loss of consortium, past and future loss of services, miscellaneous other economic damages including out-of-pocket expenses, pre- and post-judgment interest, attorney's fees, expenses, and costs.

## VIII. Request for jury trial

54. Plaintiff requests a jury trial.

**IX. Prayer**

55. For all these reasons, Tyree Talley requests that the City of Austin be summoned to appear and answer Tyree's allegations and identify its employees who shot Tyree. After a jury trial regarding his claims, Tyree seeks to recover the damages listed above in an amount to be determined by the jury and any other relief to which he is entitled.

Respectfully submitted,
Hendler Flores Law, PLLC

RWebber
______________________________

Rebecca Webber
rwebber@hendlerlaw.com
Scott M. Hendler
shendler@hendlerlaw.com

**HENDLER FLORES LAW, PLLC**
1301 West 25th Street, Suite 400
Austin, Texas 78705
Telephone: 512-439-3202
Facsimile: 512-439-3201
Attorneys for Plaintiff