IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **TYREE TALLEY,** | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 1:21-cv-00249-RP |
| **CITY OF AUSTIN AND JOHN DOES,** | § § § § | |
| *Defendants.* | § § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT AND REQUEST FOR JURY TRIAL**

To the Honorable Court:

**Table of Contents**

I.   Introduction ................................................................................................................ 2
II.  Parties ......................................................................................................................... 3
III. Jurisdiction ................................................................................................................. 3
IV.  Venue ......................................................................................................................... 4
V.   Facts ........................................................................................................................... 4
    A.   The Officer Defendants shot Tyree Talley without warning. ....................... 4
    B.   Other protesters also sustained severe injuries. ........................................... 11
VI.  Claims ...................................................................................................................... 12
    A.   Each of the Officer Defendants violated Tyree Talley's First Amendment rights when he shot Tyree who was protesting police misconduct. ...................................... 12
    B.   The Officer Defendants violated Tyree Talley's Fourth and Fourteenth Amendment rights to be free from excessive force when they shot Tyree without justification. ............. 12
    C.   The Officer Defendants acted with such impunity and reckless disregard for Tyree Talley's civil rights, their civil rights violations warrant damages that will deter similar misconduct in the future. ............................................................................... 13
    D.   The City of Austin's policy of targeting anyone who threw or had thrown anything, regardless of the threat it posed, violated protesters' First, Fourth, and Fourteenth Amendment rights. ..................................................................................... 14
    E.   The City was negligent when it used expired munitions against protesters. .............. 15
    F.   Austin Police violated the Americans with Disabilities Act and Rehabilitation Act when they failed to provide communications aids and services to deaf protesters. ............. 16
VII. Damages ................................................................................................................... 17
VIII. Request for jury trial ............................................................................................... 17
IX.  Prayer ....................................................................................................................... 17

## I. Introduction

Austin police officers shot Plaintiff Tyree Talley twelve times in the ear, arm, groin, and legs without warning and without justification. Tyree is deaf. The officer(s) continued to shoot Tyree even after he was on the ground in the fetal position trying to protect himself. Ironically, along with hundreds of thousands of protesters around the world, Tyree was protesting police brutality in the wake of the Austin Police Department's killing of Mike Ramos a month earlier and the Minneapolis Police Department's killing of George Floyd days earlier.

This lawsuit is an attempt to hold the City of Austin accountable for its violent response to demonstrators' exercise of their civil rights during the Memorial Day weekend of May 30–31, 2020. The City compounded its mishandling of the situation by failing to adequately investigate the conduct of its police officers or determine who was responsible for the wanton police violence that protestors like Tyree encountered.

Officers failed to follow required protocol and failed to utilize special services available to the APD when interacting with a deaf civilian. The Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act prohibit discrimination and police misconduct against individuals based on disability. 42 USC §12131, et seq. and 29 USC §794. Austin police made no attempt to communicate any orders to Tyree or to warn him before opening fire on him.

Finally, the City caused severe injuries by directing its officers to use the City's expired stockpile of "less-lethal" munitions. The so called "less-lethal" munitions harden after time such that expired rounds go farther when fired and cause more severe damage than unexpired munitions. The City armed its police with these expired munitions that resulted in substantial harm to those wounded including Tyree Talley.

## II. Parties

1. Tyree Talley is a resident of Austin, Texas.

2. The City of Austin is a Texas municipal corporation in the Western District of Texas. At the time of the events at issue, Chief Brian Manley was Austin's policymaker for policing.

3. Defendant Benjamin Lynch is one of the Austin police officers who shot at Tyree Talley.

4. Defendant Gadiel Alas is one of the Austin police officers who shot at Tyree Talley.

5. Defendant Timothy Cobaugh is one of the Austin police officers who shot at Tyree Talley.

6. Defendant Darrell Cantu-Harkless is one of the Austin police officers who shot at Tyree Talley.

7. Defendant Joseph Hethershaw is one of the Austin police officers who shot at Tyree Talley.

8. Defendant Gregory Cherne is one of the Austin police officers who shot at Tyree Talley.

9. Defendant Justin Wright is one of the Austin police officers who shot at Tyree Talley.

## III. Jurisdiction

10. This case presents a federal question and this Court has federal question subject matter jurisdiction over this 42 U.S.C. § 1983 lawsuit under 28 U.S.C. § 1331.

11. This Court has general personal jurisdiction over Defendants Lynch, Alas, Cobaugh, Cantu-Harkless, Hethershaw, Cherne, and Wright because they work and lives in Texas. The City of Austin is subject to general personal jurisdiction because it is a Texas municipality.

12. This Court has specific personal jurisdiction over Defendants Lynch, Alas, Cobaugh, Cantu-Harkless, Hethershaw, Cherne, and Wright (collectively, "the Officer Defendants") and the City because this case is about their conduct that occurred in Austin, Texas.

*Plaintiff's First Amended Complaint and Request for Jury Trial*

## IV.   Venue

13. Under 28 U.S.C. §1391(b), the Western District of Texas is the correct venue for this lawsuit because the events described herein occurred in Austin and at least one defendant, the City of Austin, resides in the Austin Division of the Western District of Texas.

## V.   Facts

### A.  The Officer Defendants shot Tyree Talley without warning.

14. On the evening of May 30, 2020, in the wake of the deaths of George Floyd in Minneapolis and Michael Ramos in Austin, both at the hands of police while both were unarmed, Tyree Talley was exercising his constitutional right to assemble and protest police violence.

15. Austin police officers assembled in two lines, effectively hemming in the protesters. Police formed one line on the IH-35 bridge that carries interstate traffic above 8th Street and formed another line of officers at the east end of the plaza in front of APD headquarters, west of the IH-35 bridge:



4

*Plaintiff's First Amended Complaint and Request for Jury Trial*

16. The photo below taken by a bystander at approximately the same time Police shot Tyree shows the two police lines, one above the crowd on the bridge and the other on the elevated plaza in front of APD headquarters:



17. Tyree was in front of the Austin Police Department headquarters at approximately 9:15 pm when he tossed, in a high arc, a single plastic water bottle in the general direction of officers.

18. Tyree then felt something whiz by his ear. He felt his ear to see what happened and began to realize that he had been shot.

19. Less than a second later, and before he could react, Tyree was struck in the groin with an APD projectile and collapsed to the ground in pain. This screenshot from bystander video shows Tyree collapsed in the street:

5

*Plaintiff's First Amended Complaint and Request for Jury Trial*



20. Tyree was then shot ten more times by Austin police *while he was on the ground in the fetal position*.

21. The bystander video shows a Good Samaritan run to help Tyree even as the audio demonstrates that the police continued to fire:



*Plaintiff's First Amended Complaint and Request for Jury Trial*



22. This photo taken by a member of the media at the same time as the second screenshot above at paragraph 21 shows the Good Samaritan tending to Tyree:



*Plaintiff's First Amended Complaint and Request for Jury Trial*

23. After the shooting stopped, five more people ran to help as seen in this screenshot from the bystander video:



24. The group was able to help Tyree get to his feet and helped him to limp away from the scene:



*Plaintiff's First Amended Complaint and Request for Jury Trial*

25. Shortly after the shooting, Tyree presented to the emergency room at St. David's South Austin Medical Center for treatment.

26. As a result of the harm and damage he sustained from the shooting he was unable to take care of himself or perform daily tasks, much less work, for weeks due to the pain. These pictures were taken at various stages of the healing process:

Right shoulder:



Right elbow:



Back of left and right thighs:



*Plaintiff's First Amended Complaint and Request for Jury Trial*

Right ankle:



27. Tyree also had lacerations on his genitals, buttocks, and hips.

28. Bean bag projectiles fired by Austin police officers from modified 12-gauge shotguns caused all these injuries Tyree sustained. The Officer Defendants fired some or all the rounds that injured Tyree.

29. Some of the wounds became infected and Tyree subsequently required treatment at the Seton Emergency Room on 38th Street.

30. In addition to physical pain and suffering, Tyree suffered extreme and severe mental and emotional distress, agony, and anxiety. These injuries upended Tyree's life, changing its trajectory for the worse, and causing him substantial harm and damage.

31. Austin Police Department employees had removed many of the bean bag munitions the City armed its police with on May 30, 2020 from their original packaging and these munitions circulated among officers within the police department for an unknown period of time. Upon information and belief, the City armed its police on May 30, 2020 with expired munitions which

had hardened over time and thus caused more severe injuries than munitions used within the manufacturers' recommended time frames.

32. Upon information and belief, the City failed to retain a trained reconstructionist to evaluate the shooting.

33. Plaintiff has determined that all the Defendant Officers shot at him, along with former Austin Police Officer Michael Blake Harris.

34. The City failed to determine the distances the Defendant Officers fired the kinetic energy projectiles to confirm whether they were within the manufacturer's prescribed range.

35. The City did not reprimand any officer in connection with Tyree's shooting.

**B. Other protesters also sustained severe injuries.**

36. A group of emergency room doctors who treated protestors injured by police on May 30 and May 31, 2020 at Dell Seton Medical Center, published an op-ed in *The New England Journal of Medicine* about their observations. The doctors unequivocally concluded that kinetic impact munitions (referred to by APD as kinetic energy projectiles) should not be used for crowd control, stating:

> In Austin, Texas, tensions culminated in 2 days of vigorous protest, during which police used beanbag munitions for crowd control, resulting in numerous clinically significant injuries.
> . . .
> At the closest level 1 trauma center, located blocks from the protests in Austin, we treated 19 patients who sustained beanbag injuries over these 2 days.
> . . .
> Four patients had intracranial hemorrhages. One patient presented with a depressed parietal skull fracture with associated subdural and subarachnoid hemorrhages, leading to emergency intubation, decompressive craniectomy, and a prolonged stay in the intensive care unit. Another patient presented with a depressed frontal bone fracture with retained beanbag, which was treated with an emergency craniotomy and cranioplasty.
> . . .
> Although our report reflects the experience at only one center during a short period and we cannot determine the frequency of injuries when these munitions are used, these findings highlight the fact that beanbag munitions can cause serious harm and

are not appropriate for use in crowd control. Beanbag rounds have since been abandoned by our local law enforcement in this context.

https://www.nejm.org/doi/full/10.1056/NEJMc2025923.

VI. **Claims**

  A. **Each of the Officer Defendants violated Tyree Talley's First Amendment rights when he shot Tyree who was protesting police misconduct.**

37. Tyree Talley incorporates sections I through V above into his First Amendment claim.

38. Tyree brings this claim under 42 U.S.C. §1983.

39. Tyree exercised his right to free speech and his right to assemble with other demonstrators to protest police brutality on May 30, 2020.

40. The Officer Defendants shot Tyree as he protested the habitual use of excessive force by Austin police and other police departments around the country. The Officer Defendants' decision to shoot Tyree with bean bag munitions, and the decision to continue firing after he was on the ground, incapacitated, violated Tyree's civil rights, including his First Amendment rights.

41. Each of the Officer Defendants was acting under color of law when he shot Tyree while Tyree exercised his First Amendment rights, directly and proximately causing Tyree's injuries.

  B. **The Officer Defendants violated Tyree Talley's Fourth and Fourteenth Amendment rights to be free from excessive force when they shot Tyree without justification.**

42. Tyree Talley incorporates sections I through VI.A above into his Fourth and Fourteenth Amendment claims.

43. Tyree brings this claim under 42 U.S.C. §1983.

44. Each of the Officer Defendants is liable to Plaintiff under 42 U.S.C. §1983 for his use of excessive force that constituted a deprivation of Tyree's Fourth and Fourteenth Constitutional right to due process.

45. The Officer Defendants' unlawful and unjustified use of force against Tyree was excessive and was objectively unreasonable in light of clearly established law. The Officer Defendants shot Tyree even though Tyree did not pose a danger to anyone and *after* Tyree was on the ground in the fetal position. Tyree was not armed and never presented a threat of bodily harm to himself or others including any of the individuals around him.

46. The force used by the Officer Defendants was unnecessary, excessive, and unreasonable under the circumstances because Tyree did not pose threat to the safety of police officers or others. The use of the Officer Defendants' excessive force was objectively unnecessary. Additionally, the use of such force was substantially motivated by Tyree's presence at a protest against police brutality. Tyree's action in tossing a plastic water bottle did not justify the Officer Defendants' response of continuing to fire at him until they struck him twelve times.

47. Each of the Officer Defendants was acting under color of law when they shot Tyree.

48. The Officer Defendants' unlawful and unconstitutional use of force against Tyree directly and proximately caused his damages.

**C. The Officer Defendants acted with such impunity and reckless disregard for Tyree Talley's civil rights, their civil rights violations warrant damages that will deter similar misconduct in the future.**

49. Tyree Talley incorporates sections I through VI.B above into his punitive damages claim.

50. The Officer Defendant's actions and conduct were egregious, reckless, and endangered numerous peaceful protesters and bystanders. Tyree seeks punitive damages to deter this type of retaliation and excessive force against protesters who demonstrate against police brutality in the future.

**D. The City of Austin's policy of targeting anyone who threw or had thrown anything, regardless of the threat it posed, violated protesters' First, Fourth, and Fourteenth Amendment rights.**

51. Tyree Talley incorporates sections I through VI.C above into his *Monell* claim.

52. Tyree brings this claim under 42 U.S.C. §1983.

53. Austin police General Order 206.5.3 on May 30, 2020 identified the following as a circumstances appropriate for deployment of kinetic energy projectiles (including bean bag munitions): "where the subject . . . (c) Is engaged in riotous behavior or is throwing rocks, bottles or other dangerous projectiles at people and/or officers, creating a risk for injury."

54. On May 30, 2020, Austin Police policy makers handed down the above policy to frontline Austin police officers directing them to shoot anyone throwing anything. "Shoot anyone throwing something" irrespective of the direction, the speed, or the risk the object presented became the pattern and practice of officers armed with kinetic energy projectiles on May 30, 2020 and in the days following.

55. In addition, Austin had these policies, practices, and customs in force on May 30-31, 2020:

   a. A policy of using kinetic energy projectiles that caused severe and permanent injuries to control peaceful demonstrations,

   b. A policy of using excessive force against demonstrators, by impacting them with kinetic energy projectiles,

   c. A policy not to adequately train officers regarding civil rights protected by the United States Constitution,

   d. A policy not to adequately train officers in appropriate use of kinetic energy projectiles during a protest,

   e. A policy not to adequately supervise officers armed with kinetic energy projectiles during a protest,

   f. A policy not to intervene to stop excessive force and civil rights violations by its officers during the May 30-31, 2021 protests,

    g. A policy not to thoroughly investigate excessive violence by its officers against protesters, and

    h. A policy not to adequately discipline officers for—and deter officers from—using excessive force and violating protesters' civil rights during demonstrations.

56. The City and Brian Manley knew about these policies and directed Austin police to comply with them. The City and Brian Manley developed and implemented these policing policies with deliberate indifference to Tyree's and other peaceful demonstrators' civil rights.

57. The City and Brian Manley were aware of the obvious consequences of these policies. It was predictable that implementation of these policies would violate Tyree's constitutional rights in the manner they were violated, and the City and Brian Manley knew that was likely to occur. It was obvious that these policies would injure people on May 30, 2020. The City and Brian Manley condoned and ratified the civil rights violations and the conduct that caused Tyree's injuries on May 30, 2020 by continuing to mandate the same policies on May 31 and in later press communications.

58. These policies were the moving force behind the Officer Defendants' violation of Tyree's civil rights and thus, proximately caused Tyree's severe injuries, harm, and damage.

**E. The City was negligent when it used expired munitions against protesters.**

59. Tyree Talley incorporates sections I through VI.D above into his negligence claim.

60. The City had a duty to every Austinite, including Tyree, to maintain and keep its stockpiles of police equipment, including bean bag munitions, functional and up to date.

61. The City had a duty to Tyree and every other protester not to arm its police with expired munitions that became more dangerous following expiration when its police were sent to control crowds during demonstrations. Nonetheless, upon information and belief, the City armed its police with expired munitions on May 30, 2020 and thus breached its duty to Austinites including Tyree.

15

*Plaintiff's First Amended Complaint and Request for Jury Trial*

62. Upon information and belief, Tyree sustained more serious injuries, harm, and damage because the projectiles the expired munitions had hardened. According to information and belief, the City's failure to maintain unexpired munitions stores and the conscious decision to use expired munitions against Tyree and other protesters directly and proximately caused Tyree's injuries.

### F. Austin Police violated the Americans with Disabilities Act and Rehabilitation Act when they failed to provide communications aids and services to deaf protesters.

63. According to APD Officer Marler, who heads the department's community and culture team, APD's training for handling civilians with disabilities consists of two parts. One section, called Services for the Deaf, is mandated by the Texas Commission on Law Enforcement (TCOLE) and officers must complete it in order to receive their basic peace officer license. The other part of the training is supplementary instruction specific to APD due to the large deaf population in Austin.

64. The TCOLE training works in conjunction with the ADA and requires APD to provide communication aids and services to its officers. TCOLE also outlines the best practices for officers who are in emergency situations who are unable to obtain an interpreter quickly. Officers are encouraged to use the notes app on their APD-issued cell phone to write messages back and forth.

65. On May 30, 2020, Austin Police Officers failed to follow their own policies and disregarded Tyree's safety. Tyree was unable to hear the shots fired in his direction and was unable to ascertain the extent officers were firing the kinetic energy projectiles or their reasons therefore at him. The City and the Officer Defendants violated Tyree's rights by failing to provide him reasonable accommodation in their execution of police tactics, including use of force by failing to make any attempt to communicate with him prior to opening fire.

16

*Plaintiff's First Amended Complaint and Request for Jury Trial*

66. The ADA required APD to provide communications aids and services during the protest, and APD failed to arrange for those services before the protest, even though the City knew in advance that the protest was going to occur.

## VII. Damages

67. Tyree Talley incorporates sections I through VI above into this section on damages.

68. Tyree seeks recovery for all of his harm and damages including past and future pain, past and future mental anguish, past and future disfigurement, past and future physical impairment, past and future loss of enjoyment of life, past and future lost income, past and future loss of consortium, past and future loss of services, miscellaneous other economic damages including out-of-pocket expenses, pre- and post-judgment interest, attorney's fees, expenses, and costs.

## VIII. Request for jury trial

69. Plaintiff requests a jury trial.

## IX. Prayer

70. For all these reasons, Tyree Talley requests that the Officer Defendants be summoned to appear and answer Tyree's allegations and that the Court modify the style of the case to reflect the named Officer Defendants. After a jury trial regarding his claims, Tyree seeks to recover from the City and/or the Officer Defendants the damages set forth in section VII above in an amount to be determined by the jury and any other relief to which he is entitled.

**Dated: August 22, 2023**

        **Respectfully submitted,**
        **HENDLER FLORES LAW, PLLC**

*/s/ Leigh A. Joseph*

Scott M. Hendler - Texas Bar No. 9445500
shendler@hendlerlaw.com
Leigh A. Joseph – Texas Bar No. 24060051
ljoseph@hendlerlaw.com
Stephen D. Demik – Pro Hac Vice
sdemik@hendlerlaw.com
901 S. MoPac Expy., Bldg. 1, STE 300
Austin, Texas 78746
Telephone: (512) 439-3200
Facsimile: (512) 439-3201
***ATTORNEYS FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

    I certify that a true and correct copy of the foregoing was filed via the Court's CM/ECF system on August 22, 2023, which will serve all counsel of record.

        */s/ Leigh A. Joseph*
        Leigh A. Joseph